James A. Booras v. Commissioner.
Booras v. Commissioner
Docket No. 33505.
United States Tax Court
1954 Tax Ct. Memo LEXIS 288; 13 T.C.M. (CCH) 179; T.C.M. (RIA) 54066; February 26, 1954
*288 During 1945 and 1946, petitioner was engaged in shipping relief parcels to Greece and distributing them in that country. His books of account show that during 1945 he transmitted $84,500 and $312,594.72 in 1946 to his agents to pay for distribution costs in Greece. He deducted such sums as a business expense on his returns for those years. Respondent disallowed a part of such deductions in each year. 1. Held, such sums were a deductible business expense in each year. 2. Held, further, respondent's disallowance of a part of the deductions claimed for depreciation on furniture and equipment, and the disallowance of a claimed loss on sale of delivery equipment, upheld for failure of proof. 3. Held, further, the ocean-freight cost of shipping trucks purchased in the United States for use in Greece is a deductible business expense. 4. Held, further, deduction for alleged travel expenses of $779.60 in 1946 disallowed on grounds that such expenses were personal in nature. Edward J. Tafuri, Esq., for the petitioner. Clay C. Holmes, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion This proceeding involves deficiencies in income tax, *289 as follows: Year
Deficiency
1945
$20,899.50
1946
62,110.77
The issues to be decided are: did respondent err (1) in disallowing deductions by petitioner on his returns of $25,311.30 in 1945 and of $76,928.50 in 1946 for alleged foreign distribution expenses; (2) in disallowing deductions of $190.63 in 1945 and $3,987.23 in 1946 for alleged depreciation on furniture and delivery equipment; (3) in disallowing as a business expense a deduction of $3,557.50 in 1945 expended in shipping used trucks to Greece; (4) in disallowing a deduction of $779.60 for travel expenses in 1946; and (5) in disallowing a deduction of $62.50 in 1946 as a loss on sale of delivery equipment. Other adjustments in the deficiency notice have not been contested, and will be taken into account under a Rule 50 computation. Some of the facts were stipulated. Findings of Fact The stipulated facts are so found and are incorporated herein. Petitioner was a resident of New York City, New York, during 1945 and until March 1, 1946; during the remainder of the latter year, he resided in Clarkesville, Maryland. His returns for both years were filed with the collector of internal revenue for *290 the second district of New York. During 1945 and 1946, the people of Greece were embroiled in civil war. Thousands of Greek citizens were homeless, and inflation was widespread throughout the economy. Many American citizens of Greek origin were anxious to aid the plight of friends and relatives by sending packages of food and clothing to their mother country. At the urging of leaders of the Greek churches in America, petitioner undertook to transport and deliver such packages abroad. His activities in the United States were carried on under the name of the Greek Railway Express, with principal offices at 61 Whitehall Street, New York 4, New York. His brother, Panos Booras, and others acted as his agents in Greece, in delivering the packages there. Panos Booras conducted his activities under the name of Greek Railway Express. During 1945 petitioner shipped relief packages weighing 3,314,244 pounds. During 1946 he shipped packages weighing 5,722,280 pounds. During this period, the American Express Company was charging between 7" and 8" per pound to deliver packages within Greece. To pay for the cost of distributing packages in Greece, petitioner transmitted funds to his agents *291 there. His books of account, maintained in his New York office, show that during 1945 $84,500 was sent to Greece, through Greek banks, and exchanged for Greek drachmas. The exchanges were made at the official rate of approximately 500 drachmas for $1. Because Greek currency was highly inflated during 1946, petitioner did not use the normal method of sending funds through Greek banks to secure exchange at the then official rate of approximately 5,000 drachmas for $1. Instead, he gave dollars to Greek merchants in the United States who, in turn, released drachmas which they held in Greece, to petitioner's agents there, at the unofficial or "free" rate of exchange. This rate varied from time to time during the year, and petitioner received anywhere from 5,000 to 8,000 drachmas for $1. The International Monetary Fund reported the official rate of exchange in 1946 at 5,020 drachmas for $1; and the "free" rate at 7,307 drachmas for $1. Petitioner's books show that, during 1946, $312,594.72 was paid to Greek merchants in the United States to secure the release of drachmas to his agents in Greece. On his return for that year, he deducted such amount as foreign distribution expense. The *292 $84,500 transmitted and exchanged through Greek banks in 1945 was similarly deducted on his return for that year. In determining the deficiencies herein, respondent disallowed a part of the total amount claimed on petitioner's returns for both years as foreign distribution expense. The books of account of Panos Booras were maintained by Panos in Greece, and all entries therein were made in the Greek language. Petitioner had them sent to the United States and translated into English. Such books show drachma expenditures in Greece for the years 1945 and 1946 in the total sum of 2,114,581,253. In determining the deficiencies herein, respondent disallowed a part of the amounts claimed by petitioner for foreign distribution expense. He allowed expenditures by Panos Booras of 29,594,348 drachmas in 1945. This was converted to dollars at the 1945 official rate of 500 drachmas for $1; and indicated dollar expenditures of $59,188.70. The difference in this amount and the $84,500 deducted by petitioner on his return - or $25,311.30 - was disallowed. For 1946, respondent allowed expenditures of 1,767,496,712 drachmas. This was converted to dollars at a "free" rate of exchange of 7,500 *293 drachmas for $1, and indicated dollar expenditures of $235,666.22. The difference in this amount and the $312,594.72 deducted by petitioner on his return - or $76,928.50 - was disallowed. Hence, the respondent converted to dollars total drachma expenditures shown on Panos Booras' books of 1,797,091,060, in determining the amount to be allowed petitioner as a deduction for foreign distribution expense. In 1945, petitioner purchased five used 1 1/2-ton Chevrolet cargo trucks and shipped them to Greece to be used by his agents. The ocean-freight cost was $3,557.50, which petitioner deducted as a business expense on his return for that year. The respondent determined this item should have been capitalized and added to the cost of the trucks. On his returns, petitioner claimed depreciation on furniture and delivery equipment of $1,515.94 in 1945 and $10,268.84 in 1946. The respondent disallowed $190.63 of the amount claimed in 1945 and $3,987.23 of the amount claimed in 1946. Petitioner claimed a loss of $62.50 on the sale of delivery equipment in 1946, which the respondent disallowed. After moving his home to Clarksville, Maryland, in 1946, petitioner spent $779.60 at the Plaza Hotel *294 in New York City, and deducted such amount on his return for that year as "travel expense." Opinion RICE, Judge: The major part of the deficiencies herein arises from the respondent's disallowance of a part of petitioner's deductions for foreign distribution expenses. In making such disallowance, respondent accepted the amounts shown on petitioner's books as being the total funds which he sent to his agents in Greece. Respondent, however, has allowed as a deduction, for foreign distribution expenses, only certain amounts spent by Panos Booras, petitioner's brother. At the trial, petitioner testified that his brother and his other agents were delivering relief parcels in Greece at a cost of approximately 4 1/2" per pound. The parties stipulated that petitioner shipped parcels weighing 9,036,524 pounds to Greece in 1945 and 1946. The cost of distributing them at a rate of 4 1/2" per pound would be $406,643.58. Petitioner's books show that during this same period he sent the equivalent of $397,094.72 to his brother and other agents to pay for distribution expenses. Respondent admits that petitioner had a number of agents, and that Panos Booras alone spent the equivalent of $294,854.92 *295 in distribution expenses. The American Express Company was charging between 7" and 8" per pound to deliver packages in Greece during this same period, and presumably was making a profit from such rates. Petitioner's testimony with reference to the manner of distributing the relief packages, and the cost of doing so, was clear and convincing, and remained unshaken after cross-examination. Upon weighing petitioner's testimony carefully, together with the supporting evidence in the record which we outlined above, we conclude that he established a prima facie case to overcome the presumptive correctness of the respondent's deficiency notice. , affd. (C.A. 3, 1950). Thereafter, the respondent had the burden of coming forward with additional evidence to support his disallowance of a part of the amounts claimed by petitioner as having been spent in distributing relief packages in Greece. He has not done so; hence, we accept the amounts shown on petitioner's books as being the amount of foreign distribution expenses which he incurred during the years in question, and which he is entitled to deduct as *296 a business expense on his returns for those years. Petitioner has protested the respondent's disallowance of a part of the deductions claimed for depreciation on furniture and delivery equipment in both years, and also the disallowance of a deduction for loss on sale of delivery equipment claimed in 1946. The record is wholly insufficient to overcome the presumptive correctness of the respondent's determination with respect to these items. The specific assets on which depreciation and loss were claimed were not, in fact, even identified. The respondent disallowed, as a business expense in 1945, the ocean-freight cost of shipping five used trucks to Greece. He argues because the trucks were purchased for use by petitioner's agents in Greece, and shipped to them shortly afterwards, that the ocean freight is a capital cost and not a deductible business expense in 1945. He cites no authority in support of his argument, and we are unable to find any which do so. Freight costs generally are treated as deductible business expenses in the year in which incurred. This is true of such costs even though they are incident to the relocation of heavy capital equipment, such as large machinery *297 or whole manufacturing plants. ; . We find nothing in this record which would justify classifying the ocean-freight charges as capital expenditures to be added to the cost of the trucks and amortized over the remainder of their useful life. Such charges were a business expense, and deductible as such by petitioner on his return for 1945. The remaining disallowance which petitioner protests is one of $779.60, representing the amount which he spent at the Plaza Hotel in New York City in 1946, and which he deducted as "travel expense" on his return for that year. Petitioner moved his home to Clarkesville, Maryland, after March 1, 1946; and the expenses involved were incurred after that date for meals and lodging while in New York City. Petitioner's "home," for purposes of deducting travel expenses while away from it, was New York City, his principal place of business. He chose to move his residence to another state. Expenses which he thereafter incurred, while in New York, were not "travel expenses" incurred in pursuit of his business, but were personal *298 in nature and not deductible under section 23 (a) (1) (A) of the , rehearing denied ; ; , affd. (C.A. 2, 1947). Decision will be entered under Rule 50.